IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

3 R FARMS,

        Plaintiff,

v.                                              CIV 00-383 PK/KBM – ACE

THE UNITED STATES DEPARTMENT
OF AGRICULTURE,

        Defendant

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This is an action for judicial review of an agency decision denying Plaintiff crop disaster assistance for its 1998 cayenne and jalapeño pepper crops. Review is governed by the Administrative Procedure Act, 5 U.S.C. § 706, and *Olenhouse v. Commodity Credit Crop.,* 42 F.3d 1560 (10th Cir. 1994). After the administrative record and briefs were filed, I held oral argument on June 29, 2001. Having considered the arguments, pleadings, relevant law, and being otherwise fully advised, I recommend that judgment be entered for Plaintiff 3 R Farm.

### Statutory Background

The Secretary of Agriculture ("Secretary") administers the Noninsured Crop Disaster Assistance Program ("NAP Program"). 7 U.S.C. § 7333(a). To be eligible for assistance, producers must submit an application in the form, containing the information, and within the time prescribed by the Secretary. 7 U.S.C. § 7333(b). Producers are also required to provide acreage and production reports as prescribed by the Secretary:

> (2) Records
> A producer *shall provide records, as required* by the Secretary, of crop acreage, acreage yields, and production.[1]
>
> (3) Acreage reports
> A producer *shall provide reports on acreage* planted or prevented from being planted, as required by the Secretary, *by the designated acreage reporting date* for the crop and location as established by the Secretary.

7 U.S.C. § 7333(b)(1)-(2) (emphasis added). The statutes require the Secretary to "establish farm yields for purposes of providing noninsured crop disaster assistance," 7 U.S.C. § 7333(e)(1), by two different means:

> **(2) Actual production history**
> The Secretary *shall determine yield coverage using the actual production history* of the producer over a period of not less than the 4 previous consecutive crop years and not more than 10 consecutive crop years. Subject to paragraph (3), the yield for the year in which noninsured crop disaster assistance is sought shall be equal to the average of the actual production history of the producer during the period considered.
>
> **(3) Assignment of yield**
> If a producer *does not submit adequate documentation of production history* to determine a crop yield under paragraph (2), the Secretary shall assign to the producer a yield equal to not less than 65 percent of the transitional yield of the producer (*adjusted to reflect actual production reflected in the records acceptable to the Secretary for continuous years*), as specified in regulations issued by the Secretary issued by the Secretary based on production history requirements.

---

[1] Subsection (b)(2) was amended in 2000, and now provides as follows:

> "RECORDS.-- To be eligible for assistance under this section, a producer shall provide annually to the Secretary records of crop acreage, acreage yields, and production for each crop, as required by the Secretary." Pub. L. 106-224, 109(c)(1). Subsection (b)(3) was also amended to require that a producer file "annual" reports. Pub. L. 106-224, 109(c)(1).

*7* U.S.C. § 7333(e)(2)-(3) (emphasis added).

## Regulatory Background

Regulations implementing the NAP Program provide that if a producer "want to insure future eligibility for the NAP program" they "must file one or more acreage reports at the local office no later than the date specified by [the Commodity Credit Corporation] for each crop the producer wants to insure."  7 C.F.R. § 1437.8(a).  For every acreage report filed, the producer must also "report the production for that acreage by the date the next acreage report is due."  7 C.F.R. § 1437.8(c).  The regulations provide that a "person's failure to submit the required information by the designated acreage reporting dates __*may*__ result in the denial of payments."  7 C.F.R. § 1437.8(d) (emphasis added).  The Doña Ana County Farm Service Agency issued a flyer in June 1997 setting July 15th of the year following harvest as the reporting deadline.  *Administrative Record ("Record")* at 127.

Consistent with the statutes above, acreage and production reports are required because "[p]ayment is based on an expected yield for the area and on the producer's approved yield based on actual production history, *or* a transitional [or "assigned"] yield *__if sufficient production records are not available__*."  7 C.F.R. § 1437.1 (emphasis added).  In short, disaster recovery figures are based either on the producer's history of production or on county averages.  The method of calculating these figures for the NAP Program is governed by Subpart G of Part 400 of the regulations.  *See* 7 C.F.R. § 1437.3 ("approved yield" and "assigned yield" calculated "in accordance with part 400, subpart G, of this title").

Subpart G reiterates that "[p]roduction reports must be provided to the crop insurance agent no later than the production reporting date for the crop insured" and "[f]ailure of the

producer to report acreage and production completely and accurately *may result in voidance* of the crop insurance contract." 7 C.F.R. §§ 400.53(a), (b)(4) (emphasis added). It also provides that the producer must certify the accuracy of the information, and the information submitted is subject to audit and criminal penalties. *See* 7 C.F.R. §§ 400.53(a), (b). "Verifiers" who discover inaccurate information or unacceptable records are required to recompute the producer's approved actual production history ("APH") yield, which "*may result in reduction* of the approved APH yield for any calendar year." *See id.,* § 400.53(b)(1) (emphasis added).

Under Subpart G, "actual production history coverage" is calculated using at least four and up to ten prior production figures. If there are less than four years' worth of figures, county averages are included in the calculation. 7 C.F.R. § 400.55(a). If the producer has production records for the "most recent crop year," the producer "may be required to provide [them] to determine the approved APH yield." 7 C.F.R. § 400.55(b). **"If no acceptable production records are available, the approved APH yield" is 65% of the county average."** 7 C.F.R. § 400.55(b)(1) (emphasis added). "If acceptable production records containing information for only the most recent crop year are provided, the "three [county averages] adjusted by 80 percent will be used to complete the minimum database and calculate the approved APH yield." 7 C.F.R. § 400.55(b)(2).

**Factual Background**

Plaintiff 3 R Farms is located in the Anthony area and is engaged in the commercial production of jalapeño and cayenne peppers. The Provencio family which operates the farm has grown these crops for many years and, prior to the application for relief at issue here, never sought disaster benefits. Although 3 R Farms filed annual acreage reports, it is undisputed that it

had not filed production records in 1997 or any year before. Due to poor weather conditions, 3 R Farms' 1998 pepper crops yielded less than half of its usual production levels (48% as to cayenne and 46% as to jalapeño). *See Transcript of November 2, 1999 Hearing ("Transcript")* at 64.

On March 5, 1999, Plaintiff filed a timely application for disaster relief under the 1998 Crop Loss Disaster Assistance Payment Program ("CADLP") enacted on October 21, 1998. That program made additional funds available for the 1998 crop year for all geographic regions of the United States. *See Record* at 304-06. As requested to do when it filed its application, Plaintiff submitted actual production records for its cayenne crops from 1992 through 1997. *See id.* at 226, 228.

The Doña Ana County Committee ("Committee") for the Farm Service Agency reviewed Plaintiff's application for disaster benefits. Instead of relying on 3 R Farms' actual production records, however, the Committee used county averages to determine the percentage of loss. Based on those averages, it determined Plaintiff did not meet the threshold requirement of crop loss and denied payments for the cayenne crop.[2]

On appeal following a full evidentiary hearing, Administrative Law Judge Willis Kollars found that the Committee's use of county averages in this case was erroneous. He found as a matter of fact that the "Agency does not dispute [Plaintiff's] actual production records," *id.* at 226, and that Plaintiff is a "high yield" producer compared to the other producers whose production figures were factored into the county average, *see id.* at 228. After reviewing the

---

[2] Plaintiff was awarded payments for its jalapeño crop based on those figures, but there remains an issue in this appeal of whether the benefit amount was accurately calculated.

5

regulations, Judge Kollars found that they

> clearly indicate[] that the APH is to be based on actual production records unless there are no production records available. In the absence of actual production records, the Agency may then calculate and determine an adjusted yield for use in calculating disaster benefits for the purpose of establishing the APH for a producer's crop production. In this case, [Plaintiff] had and did provide actual production records for both crops.

*Id.* at 229. Judge Kollars further found, "The evidence and testimony clearly shows that [3 R Farms'] actual production records show a greater than 35 percent production loss of the cayenne pepper crop in 1998." *Record* at 230. He concluded that by "inappropriately us[ing] county averages in lieu of actual production records that were available and provided," the Agency's decision "was not in compliance with the applicable regulations." *Id.*

The Agency appealed Judge Kollars' ruling to the Department of Agriculture National Appeals Division. In his review, Director Norman G. Cooper did not dispute the accuracy of 3 R Farms' actual production records but reversed ALJ Kollars' decision for this reason:

> Under applicable regulatory provisions the Agency may deny benefits because the Appellant's production information had not been previously filed. Therefore, it would not be erroneous for the Agency to reject the production information in 1999, <u>*although one would expect the agency to accept verifiable, accurate information if it is available, as the operative word in the regulations is 'may' in denying payments.*</u> In this case, the [ALJ's] determination is not supported by substantial evidence that [Plaintiff] timely filed production reports to require acceptance of prior year's production as a basis for benefits.

*Id.* at 371 (emphasis added). It is Director Cooper's decision that constitutes the agency's final determination which I am to review under the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 706. Director Cooper's decision may be set aside only found to be "arbitrary,

6

capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

## Analysis

As I read Director Cooper's three page decision, he found that the agency had discretion on whether to use actual unfiled production records or to use county averages in assessing the percentage crop loss to a producer. Director Cooper reasoned that since the "Agency may deny benefits because the Appellant's production information had not been previously filed[,] it would not be erroneous for the Agency to reject the production information in 1999." *Record* at 371. Defendant contends that this observation is ambiguous as to a finding of agency discretion. It appears unambiguous to me.

Having found discretion in the agency to use unfiled actual production records, such discretion must be exercised in a way that is neither arbitrary nor capricious. In other words, the Committee's decision to use county averages rather than 3 R Farms' actual production records must be based on a rational justification. Moreover,

> [a]n agency's interpretation of its own regulations may well be entitled to deference"; but it nevertheless will be set aside if it is the product of a decisionmaking process deemed arbitrary or capricious, or if it lacks factual support . . . [T]he scope of review under the "arbitrary and capricious" standard is narrow, but it is not without dimension..

*Olenhouse*, 42 F.3d at 1575-76.

Defendant argues that a systematic concern for preventing abuses and fraud in the disaster benefits program serves as a sufficient reason to reject actual production records that were not filed until after the disaster had occurred. If the Committee had indeed relied on that rationale in

7

employing its discretion in this case, such justification may have been sufficient.  However, the record is absolutely clear that the Committee felt it had **no** discretion when it rejected Plaintiff's actual production records.  *Olenhouse* precludes a court from relying on such *ad hoc* rationalizations for agency actions.  *Id.* at 1577.

Head of the District FSA Office Gilbert Garcia testified that Mr. Provencio was given a copy of DAP Amendment 9 from the agency's handbook issued in February 1999 as the reason the Committee would not use the actual production records of 3 R Farms.  The handbook indicated that pursuant to DAP Amendment 9, "county averages *will* be used" for producers without an APH/approved yield calculation.  *Record* at 124 (emphasis added).  County offices were further instructed that they "*shall not* calculated approved yields for disaster benefits only." *Id.* (emphasis added).  It should be noted, however, that this DAP Amendment 9 was made effective as of April 15, 1999 – two months <u>after</u> its publication in the agency handbook and one month <u>after</u> 3 R Farms had timely submitted its application for 1998 crop disaster benefits.

Mr. Provencio testified that Gilbert Garcia "told me that they had a directive, and he showed it to me in the handbook, that directed him to assign the county average yield to me instead of my actual production." *Transcript of November 2, 1999 Hearing* at 79.  Mr. Soloman Ramirez, who represented the FSA at the hearing before ALJ Kollars, confirmed the agency's position that if an approved production history had not been established by prior filing of production records, actual production records could not be used.  *Transcript* at 125-28.  Mr. Soloman agreed with Gilbert Garcia's interpretation of the handbook provision that the Committee had *no discretion* to use actual production figures.  *Transcript* at 127-28.

Even on the present appeal, the defendant agency maintains that "[t]he County Committee

was not required, *or even allowed*, to consider the actual production figures belatedly produced by Plaintiff." *Response Brief* at 4-5 (emphasis added). I am at a loss to square this position as support for Director Cooper's finding that *because* the agency had discretion, the decision to not use actual production figures could not be erroneous. Much less can I understand how the decision to reject accurate and contemporaneously prepared actual productions figures could be considered anything other than arbitrary and capricious. Indeed, Director Cooper expressly noted that "*one would expect the agency to accept verifiable, accurate information if it is available*." *Record* at 371. The entire record in this matter demonstrates that the actual production reports submitted by 3 R Farms represent just such reliable information.

In summary, I find that under the applicable statutory and regulatory framework, preference was for use of actual production records rather than county averages in determining whether a producer met threshold crop losses from a disaster. The Director correctly interpreted regulations in effect at the relevant time to confer discretion on the Committee to award payments based upon production records that had not been previously filed. Having found such discretion, however, the Director was required to determine whether the exercise of that discretion was arbitrary or capricious. Because, in fact, the Committee believed it had no such discretion, the Director improperly ascribed the Committee's decision as a proper exercise of discretionary authority. Therefore, I will recommend to Circuit Judge Kelly that the Director's decision should not stand, judgment should be entered for Plaintiff, and the agency should be directed to grant benefits in accordance with the thorough and well reasoned decision of ALJ Kollars, as modified by any mathematical corrections which may be appropriate.

**IT IS SO RECOMMENDED.**

9

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE